IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 22, 2005

## STATE OF TENNESSEE v. SCOTTIE D. PENNINGTON

**Appeal from the Criminal Court for Jackson County**
**No. 03-98     John Wooten, Jr., Judge**

---

**No. M2005-00320-CCA-R3-CD - Filed February 28, 2006**

---

The Appellant, Scottie D. Pennington, was convicted by a Jackson County jury of driving under the influence (DUI) and felony reckless endangerment. As a result of these convictions, Pennington received consecutive sentences of eleven months and twenty nine days for DUI and two years for reckless endangerment. On appeal, Pennington argues that the evidence is insufficient to support his convictions. Specifically, he asserts that the State failed to prove his identity as the driver of the vehicle or that the vehicle was operated in a reckless manner. After review of the record, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Michael R. Giaimo, Livingston, Tennessee, for the Appellant, Scottie D. Pennington.

Paul G. Summers, Attorney General and Reporter; Seth P. Kestner, Assistant Attorney General; Tom P. Thompson, Jr., District Attorney General; and Tiffany Gipson, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Factual Background**

On the evening of September 30, 2003, around dusk, Officer Lee Dulworth, a deputy with the Jackson County Sheriff's Department, was on routine traffic patrol with Reserve Officer Jimmy Stafford on Highway 85 near Hammock Road. Suspecting a possible DUI, they stopped a black Surburban, and, in the process of speaking to the driver of this vehicle, they heard the squealing of tires. Officer Dulworth testified, "I turned around real quick and seen this red Mustang that had front end damage and one headlight, and he had locked his brakes and he was coming right toward me." Dulworth stated, "I thought it was going to hit me and my patrol car." At trial, Officer Stafford testified that he had seen the Appellant driving the same vehicle an hour and a half to two hours prior to the incident.

Dulworth's signal for the vehicle to pull over was ignored. The Mustang continued down Hammock Road with Dulworth in pursuit while Officer Stafford remained with the Surburban. Dulworth described the driver of the Mustang as a male with dark hair wearing a baseball cap. The vehicle proceeded at a speed of around fifty to fifty-five miles per hour. The road was narrow and curvy and had a posted speed of twenty miles per hour. After determining that the Mustang had Alabama tags, Dulworth concluded that the chase was too dangerous and returned to Officer Stafford.

Having received a partial Alabama tag number from a police dispatch, Dulworth and Stafford renewed their search of the Mustang. They eventually located the vehicle parked at a residence on Old Hamilton Road at the end of Stacy Cemetery Ridge. The two were familiar with the residence from prior encounters with the Mustang. Dulworth recognized the vehicle because "it had the same front end damage, had the same headlight out and had Alabama tags on it." The hood of the car was hot.

The Appellant, along with several occupants, emerged from the residence. As he "stumbled through the front door and pretty much fell and stumbled off the front porch," the Appellant, who was dark-haired, was wearing a baseball cap, blue jeans, and a t-shirt. He had a strong odor of alcohol about his person and slurred his speech, and he carried a beer in his hand. He admitted to having driven a red Mustang with Alabama tags and one headlight earlier that night but maintained that it was a different vehicle than the one at the residence.

Officer Dulworth identified the red Mustang as the vehicle that had almost hit him earlier and testified that the Appellant matched the description of the driver of the red Mustang. The officers arrested the Appellant around 9:15 P.M. and transported him to the Jackson County Sheriff's Department. The Appellant passed out during the car ride. Upon his arrival at the jail, the Appellant refused to submit to a blood alcohol and drug test. Based upon these facts, the jury convicted the Appellant of DUI and reckless endangerment with a deadly weapon.

**Analysis**

As a preliminary matter, the State contends that because the Appellant failed to file a timely notice of appeal, the instant appeal should be dismissed. Rule 4 of the Tennessee Rules of Appellate Procedure requires that a notice of appeal should be filed within thirty days after entry of the judgment from which an appeal is sought. Rule 4(c) provides that in criminal cases, "if a timely motion or petition under the Tennessee Rules of Criminal Procedure is filed in the trial court by the defendant . . . under Rule 33(a) for a new trial [,]. . . the time for appeal for all parties shall run from entry of the order denying a new trial." In this case, the Appellant's motion for new trial was denied on November 23, 2004. The Appellant, however, did not file his notice of appeal until February 1, 2005, sixty-nine days after the trial court filed its order, thus, rendering it untimely. The timely filing of a notice of appeal, however, is not a prerequisite to the jurisdiction of this court, and we may waive the requirement in the interest of justice. Tenn. R. App. P 4(a). In this case, we waive the timely filing requirement and address the issues raised by the Appellant.

On appeal, the Appellant asserts that the proof adduced at trial was not legally sufficient to support his convictions. He contends that no direct proof was presented that he was the driver of the Mustang and that the evidence fails to establish the elements of reckless endangerment with a deadly weapon.

In considering this issue, we apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court will not reweigh or reevaluate the evidence presented. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Although a conviction may be based entirely upon circumstantial evidence, *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1974), in such cases, the facts must be "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone." *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991) (citing *State v. Duncan*, 698 S.W.2d 63 (Tenn. 1985)). However, as in the case of direct evidence, the weight to be given circumstantial evidence and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958) (citations omitted).

We are constrained to note that the Appellant, in his brief, challenges the sufficiency of the evidence for his convictions of reckless endangerment, DUI, and driving on a suspended license. Judgments of conviction for these three offenses are included in the record.[1] While the DUI and reckless endangerment offense were tried before a jury, the Appellant waived his right to a jury trial for the offense of driving on a suspended license and submitted determination of his guilt or

---

[1] The judgment of conviction for DUI reflects a seventh offense conviction. The Appellant was ineligible for sentencing as a felony offender because none of his convictions occurred before July 1, 1998. *See* T.C.A. § 55-10-413(a) (2003).

innocence on this offense to the trial court. The trial of this proceeding is not included in the record. Accordingly, any sufficiency review of this offense is waived, as there is no evidence for us to review. Tenn. R. App. P. 24(c).

With regard to the Appellant's conviction for DUI, the proof established that Officer Stafford had seen the Appellant driving the same car approximately an hour and a half earlier that day. The car was discovered at a residence 2.6 miles from the scene only minutes after the incident, and its hood was still hot. This vehicle was a red Mustang with a matching partial Alabama tag, a damaged front end, and a headlight out. The Appellant, who emerged from the residence where the vehicle was parked, matched the description of the driver of the vehicle. The Appellant admitted that he had been driving a red Mustang but maintained that it was a different red Mustang from the one at the residence. Both officers testified that the Appellant was intoxicated. This evidence, taken together, is sufficient for a rational trier of fact to find that the Appellant was driving the red Mustang observed by the officers on Highway 85 near Hammock Road while under the influence of an intoxicant. *See* T.C.A. § 55-10-401(a) (2003).

The Appellant also argues that the evidence is insufficient to support his conviction for felony reckless endangerment with a deadly weapon. He asserts that no evidence was presented that anyone was in any real danger of death or serious bodily injury. Felony reckless endangerment occurs when a person using a deadly weapon "recklessly engages in conduct which *places or may place* another person in imminent danger of death or serious bodily injury." T.C.A. § 39-13-103 (2003) (emphasis added). A deadly weapon is defined as "[a]nything that in the manner of its use or intended use is capable of causing death or serious bodily injury." T.C.A. § 39-11-106(5)(B) (2003). This court has held that an automobile can constitute a deadly weapon within the meaning of Tennessee Code Annotated section 39-11-106(5)(b). *See State v. Scott W. Long*, 03C01-9301-CR-00032 (Tenn. Crim. App. at Knoxville, Aug. 19, 1993). In this case, the Appellant's method of operating his vehicle rendered it a deadly weapon. Officer Dulworth testified that the driver of the Mustang "had locked his brakes up and he was coming right toward me." He added that he feared, "it was going to hit me and my patrol car." Based upon the Appellant's conduct and Dulworth's belief of imminent danger of bodily injury, we conclude that a jury could rationally find that the Appellant was guilty of reckless endangerment with a deadly weapon.

## CONCLUSION

Based on the foregoing, we conclude that the evidence is sufficient to support the Appellant's jury convictions for DUI and felony reckless endangerment.

_____
DAVID G. HAYES, JUDGE

-4-